Good morning. Thank you for the opportunity to come here and address the Court this morning. I know that many civil cases, in particular, are often taken under submission, so I do appreciate it. A lot less stress worrying about the price of gas. It depends upon who's waiting for the results, but yes, no, I understand that, but I do appreciate it. I know I have 15 minutes. I'm going to try and save five to the end. I'm going to try and cut through a lot of and cut directly to the case of Hearn. It seems like a lot of this discussion and a lot of what I've briefed and what Circle K has briefed all revolves out of this case in 2005 of Hearn, a lessee dealer against Shell Oil Company. And there's a historical context from that to the date of now almost 2025, two decades later, that is important, and it's important to the purposes and how the UCC works. It is a flexible standard. We know it's, you know, when we look at 2305, it survived a long time without any changes in the statute, but that's because it is built with flexibility. But it's this, I agree 2305 is flexible. Yes. Could you focus, because for me, the question in this case is, have they demonstrated that they fall within the safe harbor? If they do, by its own terms, 2305 takes away some of the flexibility we might otherwise have to look at reasonableness and things like that. And I want to focus you on something specific. So what we have here, I don't think anybody disputes what the evidence is. The evidence is that the prices charged by Circle K are lower than the prices charged by at least one refiner, higher than the prices that might be charged by other wholesalers that your clients are contractually forbidden to deal with. So I'm trying to figure out what the relevant universe of comparators are. And I understand your separate argument, which is that in the range means in the middle of the range. So let's assume, put that argument aside for a second. And you asked a prenuptial question right at the beginning, and I apologize because I have hearing aids. So do I. I'm trying to pump it up. So do I. So let's work with each other. My question is, why wasn't the district court correct in saying the relevant comparators were all people who sell gas in this market and Circle K doesn't charge the most and therefore is entitled to the benefit of the safe harbor presumption? Tell me why that's wrong. I understand other stuff about flexibility. If we weren't dealing with the presumption, you know, we'd have a different case. But we're dealing with the presumption here. So tell me why that ruling was wrong. There's a couple of, there's two primary issues that's involved with it. And those are even discussed within HERN. Because when you talk about HERN standard, we have to look at factually where HERN was. One, HERN was a refiner class of trade. Its customers involved or the person that was suing it was a lessee dealer class of  HERN, I'm sorry, Shell Oil Company, analyzed its prices to other major refiners, same class of trade, supplying their lessee service station dealers, same class of trade. So the first issue that starts to come into play is you have to have apples to apples and oranges to oranges. So in your view, who are the apples in your case? The apples are even described in HERN because HERN... No, don't tell me about HERN. Tell me about your case. Tell me about what you, who, what sellers you think should be the relevant comparators for purposes... Independent wholesale distributors like Circle K, not refiners like Shell or Chevron.  Because they are in a different class of trade and they were defined as such by HERN. Well, I don't think, I don't, let's just leave HERN aside because I'm not sure I agree with your characterization of it. We deal with a strange set of facts here. Your client can only buy from Circle K, correct? Correct. Correct. I mean, so you can't buy from any other wholesale distributor.  Because you've contractually agreed only to buy from Circle K. And so in effect, you're buying from the refiner, ExxonMobil, through its authorized distributor that you've agreed to buy through Circle K. And so I'm trying to figure out why if other refiners charge more for their gas than you have to pay, they don't qualify, you don't, Circle K doesn't qualify for the safe harbor. Is there, refiners have different financial parameters that they're dealing with. They've got... We're not worried about them, we're worried about the price of gas. I understand. We're worried about, and it's a strange case because you can't buy gas from anybody else anyway, right? So that's the way these cases all arise. You're only allowed to buy gas from Circle K. So the question is, are they charging a reasonable rate? And the safe harbor says, well, if they're not charging more than anybody else in the market, that's a reasonable rate. And you're saying, well, the refiners are not in the market because I can't buy from them. And my problem with that is you can't buy from the other wholesalers either. So why don't I just look at the price of gas in the whole market in order to come up with this analysis? Well, you know, one could take that and look in the whole market, but Circle K does not do that. And then if you're going to look in the whole market and you're going to try and find out, well, are they, in the Circle K's theory of the case, are they within the range? How do you define the range and what is the range? Is it the highest price? Your position, as far as I understand it, is that within the range means in the middle. That's the one case that does discuss it. That's correct. And that's a Fourth Circuit case. And that case was cited in Hearn as well. That's the Habbard decision, and it was cited in Hearn. And it was cited with approval. I mean, it's specifically referenced within Hearn. And when you say Hearn, just so that I'm clear, you mean HRN? HRN, yes. I apologize. That's what I did.  It's a shorthand. Yeah. And so that was part of HRN or Hearn. And you have to read through the- Well, was it? Did the court- see, that's my question. I'm not sure the court said that. The court said, well, you're plainly within the range because you're in the middle. It didn't say you wouldn't be in the range if you were in the 75th percentile or 80th, did it? I understand that. So now you get into a question of fact on how you decide that. Because now you have to then look at, okay, you've got all of the wholesale distributors that our clients are working in opposition to as such, okay? Because they're distributing gasoline, and we know how much their price is substantially less than that. And we've provided that information to the court. So where's the middle? And why is that not a question of fact? Well, but the statute doesn't say the middle. No, but what then in that range? It would turn the concept, in all due respect, of good faith on its head to say, we're going to take every price out there, everybody that is supplying gasoline. We don't care if they're a refiner supplying it to their lessee dealers like Chevron. We don't care if there's somebody buying and selling unbranded gasoline. We're just going to take the entire world, and we're going to say, that's the range. Well, let me ask the question differently. If you didn't have the contract with ExxonMobil that required you to deal with- Well, it's not Exxon, it's Circle K. Yeah, Circle K. I mean, yeah. But your initial contract when you bought the dealerships, one of the, well, you kept the dealerships. One of the deals was you had to deal with Circle K, so the two were related in my mind. But just focus- Right. They tied the purchase of the property. Focus on that you have this contract that requires you to buy from Circle K. If you weren't required to buy from Circle K, and we were trying to figure out the reasonableness of the price, would we look only at wholesalers or refiners? You look only at wholesalers. Even though you might be free to buy from refiners? Even though, say it again? Even though you might be free to go buy from a refiner? You would look only at wholesalers.  If you're challenging the price. Because the only time you're really going to be challenging the price is if you can't go. If you're under contract. If you're going to go- No. That's what I meant. You're going to go wherever the price is cheap. I've taken your contract away. Taken your contract away, and there are refiners in the market, and there are distributors in the market. You're going to go wherever. I mean, today's marketplace- So then, would you look at all the prices? Would we not? Yeah. Today's marketplace. Right. So, why don't we do- Yeah. Why does the existence of your contract take us out of that mode of analysis? Because you never get to the question. If I have the freedom to go wherever I want to go, let's say that I'm unconnected. I'm just on an open-  You can buy from anyone. I'm just buying it on the open market somewhere without having a contract with them. I just call you up and say, what's your price today? I'm going to buy it. I'm going to scout out. So, then we look at the whole market. Don't we not? customer, I'm going to go to, with the freedom, I will then go to wherever I can get the cheapest price. We agree. So, we're missing each other here. So, we agree that that's what we would do if you had no contract. Yes. You have a contract. Correct. So, why does that change our analysis? I can't go there, number one. But you can't go anywhere except to Circle K. That's right. And now 2305 comes in and says, oh, by the way, under your contract, you have the right to set the price. You have the sole discretion. Use Circle K. 2305 now comes in and says, but we're going to control that. We're going to set some standards around that. Yes. And if I interpret those standards, and I need your help on this. I'm really not trying to give you a hard time. If I interpret those standards as saying, Circle K, the courts are not going to get into this issue unless you're charging at the high end of the scale. And let's assume I don't buy your in the middle argument. Then it seems to me the relevant comparators ought to be everybody who's selling gasoline, not just some wholesalers from whom you couldn't buy anyway. In other words, you agree that that would be the relevant comparators in the analysis, but for the contract. So why does the existence of the contract change that? It changes because under 2305, historically, the cases have defined it as comparing class of trade to class of trade. 2305 has done that. To ES bills now, or whatever. Is it ES or whatever the case is? And it's not definitive either way, but the California Supreme Court says on an evidentiary issue that prices, in a case involving a claim by a jobber, that prices charged by refiners are relevant. And so if they're relevant, then why shouldn't we use them as comparators? For determining if it was in good faith? I think you should. But not for purposes of the safe harbor. The safe harbor comes into saying that, well, the safe harbor starts with the point of saying if you have a price in effect, you are presumed to be in the safe harbor. That's it. Right. But then it says the way you get out of the safe harbor, which you want to do, is by showing that the price in effect is not within the range. No. See, that's where you're wrong. That's what's wrong. It's not that it's not within the range. You have to get out of the safe harbor by showing that this is not a normal case. That's the defined term of it. It's not a normal case. And how do you show it's not a normal case? As stated in Hearn and other cases, cases relied upon by Circle K, you get out of it being not a normal case by showing the price is either discriminatory or it's not commercially reasonable. And what do you do to show it's not commercially reasonable? It's not consistent with industry practices and standards of trade. That's how you push yourself out of the safe harbor. It's not by saying in the range. In the range comes up by coming in and simply saying, I have the safe harbor. Don't the cases define the normal case as charging a price within the range of competitors? No, they don't refer to it using normal case. So you think that, so why are we worried about this comparison at all? Why are we worried about it? Why do you devote so much time in briefing to who a relevant comparator is or isn't? So what you're saying is that it's always a factual question whether a price in effect is in good faith, and you're entitled to introduce whatever evidence you can come up with about that. I can try and push it out of the normal case as the cases discuss it by showing it's not commercially reasonable. Okay, I understand. And commercially reasonable. This is not established simply because by showing that it's less than the price that other people are charging. No, no, it's not. And the cases even discuss it. They say there's a whole number of factors. So you really don't care who the comparators are then, right? Because the evidence is quite clear in this case that Circle K is charging more than some of the refiners. It's charging less than one of them, but it's charging more than others. Yes. So this whole dispute about who the relevant comparators are, in your view, is irrelevant, isn't it? No, it's not. And that goes back, again, to the precedent history of it and where that arises from and how that arose. Because they talk about putting refiners to refiners, and in Hearn it discusses the various classes of trade from refiners to wholesale distributors to lessee dealers to owner-dealers to company-operated stations, et cetera. Well, the reason I'm not sure, Judge Giselle, I'll give you an extra minute. But the reason I'm confused. But I will say to you the following. I've got the Exxon case from California that says if you present evidence that your prices fall within the range of prices charged by the relevant comparators, I understand you disagree about who the relevant comparators are. That's all that's required to fall within the safe harbor. And I take it you disagree with that statement in the California Court of Appeal decision? You are in the safe harbor, but that doesn't mean it's a normal case. Because then the UCC and the case has discussed that to push it out of that, to push it out of that safe harbor, you can do it two ways. Show that the price is discriminatory. Which you're not claiming. We're not claiming. Or show that it's not commercially reasonable.  I understand your position. And now how do you show it's not commercially reasonable? There you get into classes of trade distinctions, and there are marketing classes of trade distinctions. Okay. So just so that we, just so that we're not, I'm not operating from the wrong premise, do you agree, let's put aside that the comparators that the district court used of the other people in the market was correct. I know you disagree. Just assume for a moment that the district court was correct in saying, I look at this whole range of refiners and distributors and see if Circle K's price falls below the top. If that is the correct legal analysis, does it not establish commercial reasonableness? If it were, but it's not. Okay. Now we're on the same wavelength. Okay. Thank you.  Mr. Roberts, I think we've taken you over your time. I will put two minutes on the clock for rebuttal. So should I take a break now and come back? Yes, you should take a break now.  So you're a friend of the second argument. I'm going to take one minute of it to address one additional factor on it. Okay. And you can do that when you come back up for rebuttal. Okay. That's fine. Thank you. And I'm not sure you introduced yourself at the beginning of your argument, but you are in fact Mr. Roberts, correct? I am Ken Roberts. Thank you. Okay. May it please the Court. Matt Covington, Buckhalter Council for the Appellee, Circle K Stores. This is a case that involves a situation where, as you indicated, these dealers entered into open price term contracts in 2011 and then later 2014 and 2015, and Circle K was setting its prices using a proprietary formula that the dealers didn't know about, and of course no other refiners or distributors knew because it's highly confidential, and we've been keeping it that way in this litigation. And the dealers bought without dispute for years. And then when one competitor in around 2018 started offering prices that were lower, one distributor, I think it's Supreme, the dealers objected and filed a lawsuit claiming the prices were not set in good faith. The district court correctly observed that Circle K established that the safe harbor applies, that Circle K had an open price term, that it set its prices offered, it sold fuel to the dealers at the same price that it was selling to all the other buyers, so it's not discriminatory, and that this was a price and effect. And so there's no dispute, I don't believe. Right, so we're inside the safe harbor. We're inside the safe harbor. The question is whether or not they can get out by showing commercial unreasonableness. Yes, I believe that's the question. Right, and so I think we're all on the same wavelength now. Let's move to that. Even though my questions may have been misleading. No, I think there was some confusion in terms of how my friend responded to some of that. So now I want to get to the real thing. Right, there is no dispute. Can I get to the crux of the case? Yes, please. So now the question is how do you show that it's not commercially reasonable? And one way you can show is that you're charging a higher price than anybody else, but that's not the evidence in this case. The evidence is that you're charging a price higher than other wholesalers or jobbers, but lower than some refiner, at least one refiner. So the two questions that seem to me to be dispositive, and your friend identifies them, is one, who are the relevant comparators? And second, where in the scale keeps you in the range of commercial reasonableness? Is it just below the – is it anything below the top or do you have to be in the middle? There's some Fourth Circuit authority that sort of suggests in the middle. Right, they have it, yes. And then who are the people you compare yourself to? So those are the two dispositive questions. Without suggesting the right answer to them, can you address them? I won't suggest the right answer. You should. I'll definitely address them. There are several. First, I disagree with one of the things that you said, Judge Justice Hurwitz, about the dealership established or there's evidence in the record that Circle K is pricing below some of the other competitors. What the district court found was there was not admissible evidence the dealers put in showing that the dealers that Circle K was pricing in a commercially unreasonable manner. That is, it was pricing consistently below some other competitors. And I have details on this, and I can go through it. I'm not sure they're important. And I understand the district – They may be. Well, the district court – Because we may not get to the other issue. They may not get to the other issue. I want to just focus on this primary issue first.  And I appreciate being called justice, but there's no justice in the Ninth Circuit. Thank you. Thank you, Judge. So, again, let's assume that every one of the competitors they identified or every pricing they identified is relevant to this case. I know you're arguing that there's not – Let's assume that. Assume that. I'm just trying to figure out – get the basic framework in my mind. And one way to demonstrate that a price is not commercially reasonable is if they came in and said, Circle K charges us more than anybody else in the market charges, we would then have a fact issue on commercial reasonableness, right? I agree with you. Okay. But the evidence was not that Circle K charges more than anybody else in the market. I absolutely agree. They charged less than, as I think, as I read the record, one refiner. And I can explain a little bit. Yes, the evidence – Professor Umbeck, who's a Ph.D. and did the testimony for the HRN case and the Casserly case for the Ohio Supreme Court, was also our expert in this case. Okay. He took all the data, and he did this analysis, and what he found was that it was lower than Chevron and the same as 76 and Shell. We're missing each other here. Yeah. I understand you had an expert who did all that. But the fact that comes out of this that I want to ask you about is that you charge less than a refiner.  And their argument, which I want you to respond to, is, well, that's all very nice, but we don't buy from refiners. The class of people that we buy from, Circle K, are not refiners, but – Wholesalers.  Distributors. So my question is, and I think it's the same question I've been trying to ask your friend, and it must be my failing, but neither of yours, why isn't the relevant comparison to wholesalers as opposed to refiners? For several reasons. One is that it only makes sense to compare the prices to all the prices in the market when you're looking at it from the perspective of a dealer buying gasoline. The dealer is buying gasoline from, A, a refiner, B, a distributor. It's a commodity. It doesn't matter who is selling it. It's all that one looks at is the price. I think what the argument that your friend on the other side is making, though, is you say it just makes sense, but his argument is the same argument. You have to use apples-to-apples comparisons and oranges-to-oranges comparison, and the class of trade is different as between the refiners and the wholesalers. Okay. The case he cited, first, the authority doesn't support this. The one piece of authority he cited was the HRN case that discussed the concept of classes of trade, but what that court discussed was a completely different concept. It was in the context of discriminatory prices. That is where one seller is selling to two buyers. One buyer is a large jobber that buys hundreds of millions of gallons or tens of millions a year and has a long-term price contract. And we're not in that. Right. They've said that they're not trying to get at them. So in that case, the court, the Texas Supreme Court said you have to look at class of trade and consider that because you have to compare, you have to consider who you're selling to. So HRN may not stand for the principle he puts on it. HRN might have discriminated because it might have. The dealers claimed HRN discriminated because they sold to different prices between jobbers and single dealers like we have here. And the court there said, look, you have to look at the class of trade. It was fair for HRN to sell to different prices to those dealers because they're different classes of trade. But that has nothing to do with the flip side where you have multiple sellers, Chevron, my client, Shell, 76, all sorts of distributors selling to one dealer or four dealers who might buy it. They don't have to. There's no evidence. Is your argument that we look at this from the perspective of the generic dealer as opposed to from the perspective of this dealer? In other words, a generic dealer in the market might be able to buy from everyone in the absence of a contract. That's correct. But this particular one could only buy from a distributor, and in this case only from you as a distributor. So is it your argument that when we do this comparison, we look at the generic customer, not this particular customer? I think that it's an objective standard, which my friend has acknowledged should apply here, and that under the Safe Harbor we look at objective standards. What is the price that's being offered? Is the price that's being offered a price that is in the range of the market? The HRNK said that the Safe Harbor and the UCC does not require a price that is reasonable. That were the words they said. And it does not require a price that is the market price. It just requires a price that is in the range of what others offer. Commercial reasonableness is defined as being in the range. In the range. So now I want to get to the there's at least one circuit that has some language that suggests that what in the range means is either the mean or the median or the average or something like that. The fourth circuit. Yeah, so tell me why they're wrong. Well, they just said it as you said it, which is they didn't hold that that's the standard. They just said, well, you are obviously in the range because you're in the middle. So what you're saying is that's a description of being in the middle plainly. That's right. The Casserly case, the Ohio Supreme Court case, actually said the standard. The question is whether you're in the range of all competitors. So if you look at that case, they actually does say that that is what they should look at. And they held that the prices were commercially reasonable because they were in the range of price of competitors. And I would submit that that's the only approach that makes sense. There's no authority showing that it has to be some subset. And I would submit that it's consistent with the Casserly's decision on that point. HRN does not discuss this point. It discusses discrimination. And Havid does not address that issue. But does your client compete with refiners? Absolutely. In the sale of. Yeah, and so their expert, Matt A., testified in his deposition. He said they were all competitors. Yeah, and I asked him, who do you include in the range? And what he testified was a couple of things. But one of the things he says, you include all of them, the distributors and the refiners, branded and unbranded. And that's at page 56 of my brief. It's 2SER0330 to 0336. And he acknowledged that when you're looking at competition, who are the competitors? Circle K competes with all of them. Chevron, Shell, 76, BP. All the distributors. But that's why I asked the question about who the relevant dealer is, because you don't compete with all of them in sales to Windy Cove, do you? They are a captive dealer in this case. It's a transaction where the. Is there evidence that Circle K's prices are within the range of other wholesalers, just assuming for a moment that we were to agree with Windy Cove's argument that that's the relevant class? Yes, thank you for asking that. There is. Professor Unbeck put on evidence, and we put in evidence in our summary judgment motion and our separate statement of undisputed material facts. Can you give me the record citation, please? I will endeavor to do that. I believe that our prices were within fractions of a penny of distributors offering Shell and 76 branded fuel. Fractions of a penny higher or lower? Within. It's either higher or lower. I don't know. That's my question. We could look at his actual testimony within fractions of a penny of those. Where are you looking in the record? I would like a record cite if you can provide me with one. One moment. Okay. This is Circle K's reply to plaintiff's opposition to this undisputed, the statement of undisputed facts. It's 6SER1312 to 1317, and that is our undisputed material facts 11 and 12, that we were in the range of prices. He opined that Circle K's prices were in the range of both competitors, of jobbers and refiners, all competitors. Yeah, but when I looked at the evidence, actual evidence, and may be wrong about this, that expert seemed to view within the range as within fractions of a penny or whatever. So let's assume for a moment that the question is whether or not there's any evidence that your client charged the same as or less than all other wholesalers. I don't think there are evidence establishes that. I would have to – I remember in my mind the charts I worked on with him and put in our brief, which summarized the average prices. See, I thought when I looked at the charts, I thought the fraction of a penny stuff still put you higher. You may be correct. Higher than the other wholesalers. But they're like a tenth of a penny or something. It's essentially – call it the same. Let's put aside whether that's important or not. I'm just trying to establish the fact. And I think that's the fact. The other citation would be RUMFs 20 to 21 and our reply to their opposition regarding those, and that is 6SER1326 to 1332. Okay. The other point I will make is that aside from that, there was no admissible evidence that the dealers put in that Circle K was charging prices that were not commercially reasonable or were below the prices charged by any other dealers. The district court properly excluded some of the evidence. The supreme invoices attached to Mr. Brico's declaration were not authenticated. The other evidence, the Marcus declaration, which is SEIF fuel prices, that's 2FER81 to 86, were not cited in their UMFs, not cited in support of their opposition to our motion or in support of their own. And their prices – those prices don't match the prices that their damages expert, Dr. Luna, put in her chart. So they're not relevant. The supreme declaration, Garth Davis, at 2FER79 to 80, and his attachment was – had no expert analysis analyzing the one-page sheet of sparse data. It didn't – it wasn't thousands of pages of actual data spanning the thousands of points of data we're talking about over these years. It was one sheet of a few points of data, which were weekly averages for only two counties and not including Orange County, and there was no analysis provided by any expert analyzing them. And the prices in that one page were actually higher – supreme's prices were actually higher than the Circle K prices on the days I just happened to look at. If you compare Dr. Luna's chart, 1AFER32, she lists prices for certain dates, and you can pick some of them up if you wanted. I could tell you which ones I happened to look at. And then she compared those to Circle K's prices, but the data she looked at was some other data that she doesn't identify, and the data from supreme's declaration was actually higher by about 60 cents in two instances. One was January 7, 2018. One was January 7, 2019. I didn't do all of them myself, but the district court didn't have to do this. It wasn't required to sift through all this. Dr. Luna was a damages expert, as the district court noted, not a liability expert, not a industry expert. She didn't opine that the prices were commercially unreasonable. She didn't do an actual comparison to come up with this supposed 25-percent difference. Mr. Covington, you are now over time. You also have the unlucky position of being the very last case at the end of a very long argument morning, but I do want to make sure you've answered all the questions of my colleagues, so unless you have any other questions, thank you for your argument. Ms. Roberts, I think you went over your time, but we'll put a minute on your clock for you to make your point and answer any other questions that we may have for you. Okay. To say that it can be just match it up with the highest, and if you're going to take everybody in the marketplace and ignore class of trade distinctions, that stands the concept of good faith on its head because that simply says I don't have a standard. I get to pay. In the range, it's meaningless. Just price with the highest one and you're okay, even though it's not the same product, not the same marketplace, not the same class of trade, not the same, and not in a range. There is no range under that analysis. It's just the highest one or two, and that's not good faith. We know the good faith concept of commercially reasonable is what is used in the cases, and commercially reasonable considers all of the facts. I can go through and pick through their numbers. He can try and pick through my witness's numbers and find two times in two years where she might have missed a price that was maybe less than, but they missed the point, and that is this is about what pushes it out, non-discriminatory and commercially reasonable. In the range, might or might not be commercially reasonable, but commercially reasonable is traditionally a question of fact. All of the questions that I'm being asked, well, what if it's here? What if it's there? What if it's here? What if it's there? Is that in the range? There isn't a set answer because it's governed by a bronze standard of good faith, meaning commercially reasonable, consistent with any industry practices and customs, and in this case, wholesalers we submit. Thank you very much. Counsel, thank you very much for your argument. I'd like to also thank our court staff, who's been a tremendous help to us this week, and this court now stands adjourned. All rise.  This court, for this session, stands adjourned.
judges: Parker, HURWITZ, DESAI